**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rosa B. Valdez Rosas, Appellant,

v.

Jorge A. Vega Ortiz, Respondent.

Appellate Case No. 2023-000393

Appeal From Clarendon County
Ernest J. Jarrett, Family Court Judge

Unpublished Opinion No. 2024-UP-044
Submitted January 24, 2024 – Filed February 1, 2024

**AFFIRMED**

John Stephen Keffer, of Keffer Law Firm, of Sumter, for Appellant.

Kelly A. Seabrook and Christina Maria Perry, both of Law Office of Kelly A. Seabrook, LLC, of Columbia, for Respondent.

Christopher Ryan DuRant, of Johnson DuRant, LLC, of Manning, as Guardian ad Litem.

**PER CURIAM:**  Rosa B. Valdez Rosas (Wife) appeals a divorce decree, arguing the family court erred in awarding Jorge A. Vega Ortiz (Husband) sixty percent of the marital estate, medical decision-making authority over the couple's minor child (Child), and $10,000 in attorney's fees.  We affirm pursuant to Rule 220(b), SCACR.

"Appellate courts review family court matters de novo, with the exceptions of evidentiary and procedural rulings."  *Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019).  "While this broad scope of review allows the appellate court to find facts in accordance with its own view of the preponderance of the evidence, it does not require this court to disregard the findings of the family court."  *Greene v. Greene*, 439 S.C. 427, 439, 887 S.E.2d 157, 164 (Ct. App. 2023).  "[T]he appellant bears the burden of convincing the appellate court that the family court committed an error or that the preponderance of the evidence is against the family court's findings."  *Daily v. Daily*, 432 S.C. 608, 618, 854 S.E.2d 856, 862 (Ct. App. 2021).

We hold the family court did not err in granting Husband sixty percent of the marital estate because the record shows the overall apportionment was equitable and fair.  *See* S.C. Code Ann. § 20-3-620(B) (2014) (stating the family court "must give weight in such proportion as it finds appropriate to all of the following factors" in apportioning marital property: (1) the duration of the marriage; (2) marital misconduct or fault of the parties; (3) the parties' contributions; (4) the income of each spouse; (5) the health of each spouse; (6) each spouse's need for training or education; (7) the nonmarital property of each spouse; (8) the parties' retirement benefits; (9) the existence of a spousal support award; (10) the use of the marital home; (11) any tax consequences; (12) the existence of any support obligations; (13) any lien or encumbrances on marital property; (14) child custody arrangements and obligations; and (15) such other relevant factors as the court enumerates in its order); *Brown v. Brown*, 412 S.C. 225, 235, 771 S.E.2d 649, 654 (Ct. App. 2015) ("In reviewing a division of marital property, an appellate court looks to the overall fairness of the apportionment.").

At the final hearing, the parties stipulated that only the proceeds from the sale of the marital home remained to be divided.  In apportioning the proceeds, the family court considered all statutory factors, including the following: the three-year length of the marriage; the youth and health of the parties; the grant of divorce on the ground of one year's separation; the absence of evidence that marital misconduct caused the parties' separation; Husband's purchase of the home prior to the marriage and payment of the mortgage and related expenses during the marriage;

the relative incomes, education, and earning potential of the parties; and Wife's actions delaying the sale of the home.  Based on the foregoing, we find the family court's award of sixty percent of the marital estate to Husband was appropriate.

Next, we hold the family court did not err in awarding Husband primary medical decision-making authority over Child.  Wife, who was formerly a practicing Jehovah's Witness but who had formally withdrawn from the religion at the time of the final hearing, argues the family court violated her First Amendment rights by granting Husband this authority based on her religious beliefs.  We disagree.  The family court relied on several factors in reaching its decision, including Wife's testimony that she was previously hospitalized and had refused a blood transfusion, her admission at the hearing that she would "probably not" allow Child to receive a blood transfusion even if he were critically injured and no other treatment options were available, Husband's greater involvement in Child's healthcare, and the grant of medical decision-making authority to Husband at the 2020 temporary hearing with no subsequent problems.  Moreover, Wife testified she formally withdrew from the religion and had not attended the church since 2020, and both parties testified Child was baptized in the Catholic church.  Accordingly, we hold the family court did not err in awarding Husband final decision-making authority over Child's medical needs.  *See Pountain v. Pountain*, 332 S.C. 130, 135, 503 S.E.2d 757, 760 (Ct. App. 1998) ("In all child custody controversies, the welfare and best interests of the children are the primary, paramount, and controlling considerations of the court."); *id.* at 138, 503 S.E.2d at 761 (finding the family court "properly considered the wife's professed religious beliefs as those beliefs relate to the advancement of the child's sense of stability and well-being"); *S.C. Dep't of Soc. Servs. v. Father & Mother*, 294 S.C. 518, 523, 523 n.19, 366 S.E.2d 40, 43, 43 n.19 (Ct. App. 1988) (citing *Prince v. Massachusetts*[1] and explaining that the law does not allow "a Jehovah's Witness [to] withhold medical care from his child").

Finally, we hold the family court properly awarded Husband $10,000 in attorney's fees.  *See E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992) (stating that in determining whether to award attorney's fees, the family court considers "(1) the party's ability to pay his/her own attorney's fee; (2) [the] beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) [the] effect of the attorney's fee on each party's standard of living"); *Daily*, 432 S.C. at 630, 854 S.E.2d at 868 ("Failing to cooperate and prolonging litigation can serve as an additional ground for awarding attorney's fees."); *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991)

---

[1] 321 U.S. 158 (1944).

(clarifying that in determining the reasonableness of attorney's fees, the family court considers "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) [the] professional standing of counsel; (4) [the] contingency of compensation; (5) [the] beneficial results obtained; [and] (6) [the] customary legal fees for similar services"); *Daily*, 432 S.C. at 630-31, 854 S.E.2d at 868 ("The family court can also consider a litigant's uncooperative and evasive behavior when determining the reasonableness of the fees."). The family court properly considered each factor in determining whether to award attorney's fees and how much to award, including several instances in which Wife delayed the sale of the marital home. The delay caused Husband to make years of extra mortgage payments between the date of the parties' separation and the judicially compelled sale of the home. Accordingly, we hold the family court did not err in ordering Wife to pay $10,000 of Husband's attorney's fees.[2]

**AFFIRMED.**[3]

**MCDONALD and VINSON, JJ., and LOCKEMY, A.J., concur.**

---

[2] Wife also argues that in awarding attorney's fees, the family court erroneously relied on temporary orders that were not entered into the record. We find this argument is without merit because at the final hearing, Wife indicated she did not have "any objections to any previous orders."

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.